**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES TALBERT** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 23-2262** |
| | : | |
| **JOSH SHAPIRO** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                                    **July 14, 2023**

     Incarcerated serial litigant Charles Talbert now sues Pennsylvania Governor Josh Shapiro challenging decisions made by unnamed state actors in unidentified correctional facilities to hold him in restricted housing units without providing him mental health treatments or an ability to obtain release. Congress requires we screen his allegations for merit before issuing summons. Mr. Talbert raises fair questions about the way our society addresses the mental health concerns of our incarcerated persons. And these fair questions should be examined including at a policy and legislative level as warranted. But Mr. Talbert cannot sue the Governor in his official capacity for damages given the Commonwealth's immunity under the Eleventh Amendment. And Mr. Talbert does not come close to pleading facts which would allow us to plausibly infer the Governor (in his individual capacity) has either personal involvement or supervisory knowledge of Mr. Talbert's status or claims. We cannot see how the Governor would have such knowledge. We dismiss all claims against the Governor in his individual capacity without prejudice to Mr. Talbert possibly being able to timely plead specific facts allowing us to infer some personal liability of the Governor.

I.      **Alleged pro se facts and matters of public record.[1]**

Unnamed officers arrested Charles Talbert for an unidentified crime and detained him in an unidentified facility on January 8, 2019.[2] An unnamed Philadelphia Court of Common Pleas judge "realized" Mr. Talbert suffered from serious mental illness about a year later.[3] The judge ordered the Commonwealth provide Mr. Talbert with mental health treatment and appropriate housing the same day.[4]

But the Commonwealth instead has held Mr. Talbert in the restrictive housing unit in solitary confinement at unidentified facilities since January 13, 2020 because of his behaviors related to his mental health conditions.[5] Mr. Talbert is not being treated for his mental health diagnoses while in solitary confinement.[6]

### *The Parole Board denies Mr. Talbert's access to parole hearings.*

Mr. Talbert has accrued time in the restrictive housing unit while incarcerated at unnamed facilities lasting through 2032 "[d]ue to the symptoms of [his] mental health conditions[.]"[7] Mr. Talbert claims he completed his minimum sentence eleven months ago in July 2022, but the Parole Board denied him a parole hearing because he is in the restrictive housing unit.[8]

Mr. Talbert claims the Commonwealth's Parole Board has a process where it considers whether an incarcerated person will be eligible for parole after reaching a minimum sentence.[9] But if an incarcerated person is placed in the restrictive housing unit, he will not be eligible for a Parole Board hearing.[10] So Mr. Talbert's "maximum term" is now up in 2026 which is five years "beyond" his minimum sentence since the Parole Board is not holding a hearing for him in the restrictive housing unit.[11] Mr. Talbert is "being forced to do the remainder of his sentence in isolation."[12]

***The Governor ignores Mr. Talbert's prolonged isolation.***

The Department of Justice at some unknown time informed the Commonwealth and its past and present governors through its investigative report the Department of Corrections keeps incarcerated persons with serious mental illness in prolonged isolated confinement.[13] Governor Shapiro "[u]pon being elected into the office" at some unknown time "knowingly, intentionally, and in reckless disregard for the mental health of [incarcerated persons] in prolonged isolated confinement, failed to take any reasonable, meaningful, [or] appropriate measure to cease, desist, and correct the [] unconstitutional practice."[14]

Mr. Talbert claims Governor Shapiro "[t]hrough his chairmanship of the Executive Board" and "administrative and policy statements contained in Executive orders, or by Management and other Directives" establishes policies and practices for all employees and agencies under his jurisdiction.[15] And the Department of Corrections "is an agency under [Governor Shapiro's] jurisdiction."[16] So, because of the Department of Justice's investigation report on the unconstitutional practice along with "other Federal and International laws[,]" Governor Shapiro knew he had a duty to rectify the "unconstitutional practice of torturing inmates with serious mental health conditions, by taking reasonable measures to reform the manner in which they can be punished . . . for their behavior caused by [] mental health symptoms."[17]

But instead Governor Shapiro "turned a blind eye" and "approved[ed] the [Commonwealth's] unconstitutional practice without any intent of correction."[18] And Governor Shapiro failed to take reasonable measures to "cease, desist, and correct" the Commonwealth's practice of punishing incarcerated individuals' mental health behavior by isolating them instead of providing them court ordered treatment and housing, and he "recklessly" denied them parole.[19] Mr. Talbert alleges Governor Shapiro's "acts and inactions" subjected him to unnecessary and

wanton infliction of psychological pain and suffering; inflicted disproportionate punishment to the severity of his misdemeanor; affected his serious mental health needs; deprived him of his protected liberty interests without due process; deprived him equal access to parole hearings; and aggravated his preexisting hypertension.[20]

## II.    Analysis

Mr. Talbert pro se sues Governor Shapiro in his individual and official capacities and separately under a theory of supervisory liability.[21] Mr. Talbert's Complaint, construed in the most liberal fashion without speculation, seemingly tries to plead civil rights claims against Governor Shapiro for depriving him of his due process rights, his Eighth Amendment rights, and his right to equal protection. Mr. Talbert seeks more than $250,000.00, costs, punitive damages, fees, and injunctive relief.

We must screen these allegations for merit before issuing summons as Mr. Talbert knows from his earlier cases.[22] Congress in 28 U.S.C. § 1915A requires we screen the incarcerated Mr. Talbert's Complaint.[23] Congress requires we must "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."[24] On review, we must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or … seeks monetary relief from a defendant who is immune from such relief."[25] We apply the same standard under Federal Rule of Civil Procedure 12(b)(6) when considering whether to dismiss a complaint for failure to state a claim under section 1915A(b)(1).[26] A complaint containing "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" meets the Rule 12(b)(6) standard.[27]

We accept all facts in Mr. Talbert's Complaint as true and construe those facts in light most favorable to him to determine whether he states a claim to relief plausible on its face.[28] We are directed by our Court of Appeals to be "mindful of our obligation to liberally construe a *pro se* litigant's pleadings particularly where the *pro se* litigant is imprisoned."[29] We are to "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[30] But "*pro se* litigants still must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants."[31]

### A.    We dismiss damages claims against Governor Shapiro in his official capacity.

Mr. Talbert sues Governor Shapiro for violating his civil rights in both his individual and official capacities.[32] Mr. Talbert claims Governor Shapiro failed to take reasonable measures to "cease, desist, and correct" the Commonwealth's practice of punishing incarcerated individuals' mental health behavior by isolating them instead of providing them with court ordered treatment and housing.[33] And he "recklessly" denied them parole.[34]

Mr. Talbert cannot sue Governor Shapiro for damages in his official capacity. "Absent consent by the State, the Eleventh Amendment provides the [Governor] protection from federal suit in [his] official capacit[y]."[35] As our Court of Appeals has held "the Commonwealth of Pennsylvania has expressly withheld its consent to be sued" so "the governors enjoy Eleventh Amendment Immunity from suit for acts taken in their official capacities."[36]

We dismiss all damages claims against Governor Shapiro in his official capacity with prejudice.[37]

**B.      We dismiss Mr. Talbert's individual capacity claims against Governor Shapiro without prejudice.**

Mr. Talbert sues Governor Shapiro in his individual capacity for violating his due process rights under the Fourteenth Amendment, the Eighth Amendment's ban on cruel and unusual punishments, and his right to equal protection of the laws under section 1983.[38] "Individual capacity claims under section 1983 'seek to recover money from a government official, as an individual, for acts performed under color of state law.'"[39] "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."[40]

**1.      We dismiss Mr. Talbert's due process claim.**

Mr. Talbert sues Governor Shapiro for violating his due process rights. Mr. Talbert claims he had a protected liberty interest to receive mental health treatment and appropriate housing, but "Defendants" established the "practice of punishing inmates for the symptoms of the mental health disorders" by placing them in solitary confinement.[41] He claims Governor Shapiro "caused [him] to be deprived of meaningful process by failing to cease, desist, and correct" the "unconstitutional practice."[42]

Under the Due Process clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law[.]"[43] The Fourteenth Amendment's Due Process clause protects both substantive and procedural due process rights.[44] The relevant inquiry in determining whether government conduct violates substantive due process "is whether the behavior of the government officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."[45] Mr. Talbert must establish "the loss of a protected property

interest without adequate process" to succeed on a Fourteenth Amendment procedural due process claim.[46]

Mr. Talbert appears to bring a procedural due process claim against Governor Shapiro as he claims Governor Shapiro caused him to be deprived of "meaningful process" by failing to "cease, desist, and correct" his placement in the restrictive housing unit.[47] "[D]ue process of law" essentially requires the government provide a person notice and opportunity to be heard in connection with the deprivation of life, liberty, or property.[48] "The core of due process is the right to notice and a meaningful opportunity to be heard."[49] We must first determine whether Mr. Talbert has a liberty interest protected by the "liberty or property" language of the Fourteenth Amendment.[50] If so, we determine what process is due to protect the interest and whether Governor Shapiro, in his personal capacity, violated the process due.[51]

Our Supreme Court has held "segregated confinement d[oes] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."[52] And a transfer from one level of custody in a prison to another level normally does not affect a constitutionally protected interest.[53] But a liberty interest may arise when a prison's actions impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[54] To determine whether disciplinary segregation imposes such a hardship, we must consider: "(1) the duration of the disciplinary confinement; and (2) whether the conditions of confinement were significantly more restrictive than those imposed upon other inmates in solitary confinement."[55]

Our Court of Appeals in *Shoats v. Horn* found long term solitary confinement can impose a "significant hardship on the inmate in relation to the ordinary incidents of prison life."[56] Mr. Shoats had been confined in "virtual isolation for almost eight years."[57] Our Court of Appeals held

7

eight years in administrative custody, with no prospect of immediate release in the near future, is "atypical" and Mr. Shoats had a protected liberty interest adversely affected by his indefinite segregation.[58] But our Court of Appeals rejected Mr. Shoats's argument he had been deprived of the process due under the Fourteenth Amendment because "periodic reviews conducted by the [program review committee] . . . comport with the minimum constitutional standards for due process."[59]

Mr. Talbert's alleged placement in the restrictive housing unit for three and a half years where he claims he has been kept in solitary confinement may implicate a protected liberty interest.[60] But he does not plead how the state actors denied him procedures to challenge his placement in the restrictive housing unit. He only pleads Governor Shapiro "caused" him "to be deprived of meaningful process by failing to cease, desist, and correct the [] unconstitutional practice."[61] This is not enough. Mr. Talbert does not plead Governor Shapiro individually denied him of a procedure which he must do to establish civil rights liability.[62] Personal involvement must be alleged.

Mr. Talbert also seemingly tries to allege Governor Shapiro denied him due process because he is not eligible to be heard by the Parole Board while in the restrictive housing unit.[63] But "[t]he Board of Probation and Parole, not the [Department of Corrections], has exclusive authority over parole supervision."[64] So Governor Shapiro had no involvement in Mr. Talbert's supervision regarding parole unless Mr. Talbert pleads facts allowing us to infer Governor Shapiro's direct involvement.

Mr. Talbert does not plead facts allowing us to infer Governor Shapiro personally denied him of due process. We dismiss Mr. Talbert's due process claim against Governor Shapiro in his individual capacity without prejudice.

### 2. Mr. Talbert does not state an Eighth Amendment claim against Governor Shapiro.

Mr. Talbert alleges his placement in the restrictive housing unit amounted to cruel and unusual punishment. He claims Governor Shapiro's "practice" caused him "to be denied treatment while in solitary confinement for over [three and a half] consecutive years."[65] He also claims he suffered "psychological and physical pain" in the restrictive housing unit.[66] But Mr. Talbert fails to sufficiently plead facts Governor Shapiro had personal involvement in his alleged punishment or even knew of his placement in the restrictive housing unit.

The Eighth Amendment outlaws cruel and unusual "punishments."[67] The Eighth Amendment prohibits punishments which violate civilized standards and concepts of human decency.[68] "The relevant Eighth Amendment inquiry is whether [Mr. Talbert] has been deprived of the 'minimal civilized measure of life's necessities.'"[69] "To sufficiently allege prison officials violated his Eighth Amendment rights by imposing inhumane conditions, [Mr. Talbert's] complaint ha[s] to allege facts showing (1) the deprivation he endured was 'sufficiently serious,' and (2) the prison officials had 'a sufficiently culpable state of mind.'"[70] Mr. Talbert must show a substantial risk of serious harm to adequately plead the deprivation element.[71] The second element is subjective and requires Mr. Talbert to sufficiently plead Governor Shapiro acted with deliberate indifference.[72]

Deliberate indifference is "effectively alleged where an [incarcerated person] shows officials knew of, but disregarded, [] the prison conditions posed an excessive risk to [incarcerated person's] health and safety."[73] There must be a deliberate and unnecessary infliction of pain done knowingly to constitute cruel and unusual punishment.[74] Prison officials have a duty to protect incarcerated persons from violence at the hands of others.[75] But they also have a duty to provide appropriate mental health care as mandated by the Eighth Amendment.[76]

"[D]etention in a [restrictive housing unit], without more, generally is insufficient to establish an Eighth Amendment violation."[77] But our Court of Appeals has "repeatedly recognized the severe effects of prolonged solitary confinement[.]"[78] And our Court of Appeals has acknowledged "the robust body of legal and scientific authority recognizing the devastating mental health consequences caused by long-term isolation" and the "growing consensus" solitary confinement conditions can cause "severe and traumatic psychological damage" which in turn leads to high rates of self-harm or suicide in inmates who had spent time in solitary confinement.[79] Against this backdrop, our Court of Appeals in *Clark v. Coupe* held an incarcerated person alleged facts he endured a "sufficiently serious" deprivation where prison officials knew he suffered a serious mental illness but kept him in complete isolation for seven months.[80] And our Court of Appeals also found the incarcerated person alleged the prison official "possessed a culpable state of mind" because, among other things, the alleged the official had been "well aware" the incarcerated person suffered a serious mental illness given he had been treated for schizophrenia and bipolar disorder at the prison for over ten years.[81]

Mr. Talbert alleges he has been in solitary confinement in the restrictive housing unit for over three years "for behavior related to the symptoms of his mental health conditions."[82] He claims this "punishment" caused him "to suffer from unnecessary and wanton psychological and physical pain[.]"[83] But Mr. Talbert pleads no facts showing Governor Shapiro personally subjected him to cruel and unusual punishment with a deliberate indifference towards his well-being. Mr. Talbert does not plead Governor Shapiro in his personal capacity deprived Mr. Talbert of mental health treatment. Mr. Talbert does not plead Governor Shapiro placed him in the restrictive housing unit. Mr. Talbert pleads no facts indicating Governor Shapiro personally caused him to suffer serious consequences. Unlike in *Clark v. Coupe*, where the incarcerated person alleged the

official had been aware the incarcerated person suffered a serious mental illness, Mr. Talbert pleads

no facts showing Governor Shapiro knows of his mental illness or consciously disregarded a risk

to Mr. Talbert's mental health treatment.

Mr. Talbert fails to sufficiently plead Governor Shapiro had any personal involvement in

his alleged Eighth Amendment violations. We dismiss Mr. Talbert's Eighth Amendment claims

against Governor Shapiro without prejudice.

### 3.  Mr. Talbert fails to state an equal protection claim against Governor Shapiro.

Mr. Talbert sues Governor Shapiro in his individual capacity for violating his rights under

the equal protection clause of the Fourteenth Amendment. Mr. Talbert claims Governor Shapiro's

"practice" caused him "and others with mental health disorders" to be discriminated against

because of their "symptomatic behavior[] by being kept in prolonged isolated confinement and

denied parole hearings like others similarly situated with minimum sentences."[84] Mr. Talbert

alleges "no rational basis for the difference in treatment[.]"[85] But Mr. Talbert provides no facts

about other incarcerated persons' treatments. Mr. Talbert also fails to provide facts about Governor

Shapiro's personal involvement with Mr. Talbert's placement in the restrictive housing unit.

Under the equal protection clause, no state shall "deny to any person within its jurisdiction

the equal protection of the laws."[86] "This is not a command that all persons be treated alike but,

rather, 'a direction that all persons similarly situated should be treated alike.'"[87] To state a claim

under the equal protection clause, Mr. Talbert must show "he was treated differently than other

similarly situated [incarcerated persons], and that this different treatment was the result of

intentional discrimination based on his membership in a protected class[.]"[88] But "[t]he mentally

ill are not a recognized protected class for equal protection purposes."[89]

Mr. Talbert may raise a "class of one" equal protection claim where he shows he alone "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference[.]"[90] To maintain such a claim Mr. Talbert must allege: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."[91] Our Court of Appeals held in *Glenn v. Barua* and in *Hill v. Borough of Kutztown* claimants must identify similarly situated individuals being treated differently.[92] And when alleging the existence of similarly situated individuals, Mr. Talbert "cannot use . . . 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not suffice.[93]

Mr. Talbert does not plead disparate treatment compared to other specified incarcerated persons, but instead pleads the conditions of his treatment impacted him and "others."[94] Mr. Talbert does not allege others displaying his same behavior do not receive the same treatment. Mr. Mr. Talbert claims his treatment is "clearly irrational" but he "cannot use conclusory, boilerplate language to show that he may be entitled to relief[.]"[95]

We dismiss Mr. Talbert's equal protection claim without prejudice if Mr. Talbert can plead the necessary elements in good faith.

### C.   Mr. Talbert's claims against Governor Shapiro as a "supervisor" also fail.

Mr. Talbert also does not state a claim to the extent we can liberally construe his allegations as seeking to impose liability upon Governor Shapiro under a "supervisory liability" theory. Mr. Talbert does not allege Governor Shapiro is the supervisor of a correctional officer at the unnamed facility where the Department of Corrections incarcerates Mr. Talbert. Mr. Talbert instead pleads Governor Shapiro "establishes policies and practices for all employees and agencies under his

jurisdiction" with the Department of Corrections being "an agency" under his jurisdiction.[96] And Governor Shapiro "knew, or had reason to know" the Commonwealth, Department of Corrections, and previous governors "established and maintained an unconstitutional practice of punishing people for the symptoms of their mental illness in prolonged isolated confinement."[97]

There are two theories of supervisory liability under section 1983.[98] The first theory allows section 1983 liability if the supervisor "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."[99] Under the first theory, Mr. Talbert must show: (1) "the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation"; (2) "the defendant-official was aware that the policy created an unreasonable risk"; (3) "the defendant was indifferent to that risk"; and (4) "the constitutional injury was caused by the failure to implement the supervisory procedure."[100] The second theory relates to whether the supervisor "participated in violating the plaintiffs rights, directed others to violate them, or, as the person in charge, had knowledge of an acquiesced in his subordinates' violations."[101] But "liability may not be based solely on a theory of *respondeat superior*; the official must have had some personal involvement in the events giving rise to the cause of action."[102]

We are guided by Judge Arbuckle's reasoned decision in *Nottingham v. Shapiro* where Mr. Nottingham sued Governor Shapiro—through his supervisory role as the attorney general at the time—under section 1983 for alleged police, prosecutorial, and judicial misconduct.[103] Judge Arbuckle found Mr. Nottingham failed to state a claim because he did not show Attorney General Shapiro knew, or even had a reason to know, about the alleged harms he suffered.[104] And Mr. Nottingham failed to allege Attorney General Shapiro had responsibility over the actions of police, prosecutors, and local judges, nor could he, as the attorney general does not supervise and oversee

the work of local county prosecutors, local police, state police, or judges.[105] So Judge Arbuckle concluded a complaint which "asks [him] to infer [] [Attorney General] Shapiro might somehow be involved in any part of this thirty-two year pattern of misconduct solely because of his government position is not reasonable."[106]

Mr. Talbert, like Mr. Nottingham, fails to allege Governor Shapiro has responsibility over the unnamed correctional officers, or anyone at the unnamed facilities, who placed Mr. Talbert in the restrictive housing unit. And Mr. Talbert fails to plead Governor Shapiro acted with deliberate indifference and maintained a policy, practice or custom which directly caused Mr. Talbert to remain in prolonged isolation in the restrictive housing unit under the first theory of supervisory liability. Beyond claiming Governor Shapiro "knew, or had reason to know" the Commonwealth, Department of Corrections, and previous governors maintained an unconstitutional practices of placing incarcerated individuals in insolation as punishment for symptoms of their mental illness, Mr. Talbert does not plead facts to support these conclusions.[107] We must accept Mr. Talbert's factual allegations as true.[108] But we are not obligated to credit his legal conclusions.[109]

Mr. Talbert does not plead Governor Shapiro established and maintained a policy, practice or custom which led to Mr. Talbert's placement in the restrictive housing unit. Mr. Talbert instead alleges Governor Shapiro "turned a blind eye" to the "unconstitutional practice of torturing [incarcerated persons] with serious mental health conditions" and thus "approv[ed] the [Commonwealth's] unconstitutional practice without any intent of correction."[110] And "[a]lthough a supervisor cannot encourage constitutional violations, a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates."[111] So alleging Governor Shapiro "turned a blind

eye" to the unconstitutional practices of the Commonwealth and Department of Correction is not sufficient to impose supervisor liability.[112]

And we cannot even assume Governor Shapiro knew of Mr. Talbert's placement in the restrictive housing unit. As Judge Arbuckle found in *Nottingham*, we cannot infer Governor Shapiro "might somehow be involved" in Mr. Talbert's placement in the restrictive housing unit "solely because of his government position."[113]

Mr. Talbert does not plead facts beyond his conclusory allegations Governor Shapiro maintained a policy, practice or custom under the first theory of supervisory liability. And he pleads no facts Governor Shapiro directly participated in violating his rights, directed others to violate his rights, or knew of this violation under the second theory of supervisor liability. We cannot allow this claim to move forward on broad speculation alone.[114] The only facts we can glean are unknown prison officials housed him in solitary confinement and he suffers an unspecified mental health disability. Mr. Talbert does not attribute personal involvement of Governor Shapiro in violating his constitutional rights.[115]

We dismiss Mr. Talbert's claims based on a theory of supervisory liability without prejudice.

## III. Conclusion

Mr. Talbert cannot sue Governor Shapiro in his official capacity. We dismiss all claims brought against Governor Shapiro in his official capacity with prejudice. We dismiss Mr. Talbert's civil rights claims against Governor Shapiro in his individual capacity and brought under a theory of supervisory liability for depriving Mr. Talbert of his due process rights, violating his Eighth Amendment rights, and violating his rights to equal protection without prejudice. We allow Mr. Talbert to timely amend his Complaint if he can allege facts consistent with Federal Rule of Civil

Procedure 11. We remind Mr. Talbert "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.[116]

---

[1] We may take judicial notice of publicly available records. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a pleading has stated a claim).

[2] ECF 1 ¶ 8; *see also Com. v. Talbert*, CP-51-CR-0008348-2018 (Phila. Cnty. Com. Pl.).

[3] ECF 1 ¶ 9.

[4] *Id.*

[5] *Id.* ¶ 10. We know Mr. Talbert is now being held at SCI Phoenix because of his current mailing address. *Id.* at 9.

[6] *Id.* ¶ 11.

[7] *Id.* ¶ 16.

[8] *Id.* ¶ 18.

[9] *Id.* ¶ 14.

[10] *Id.* ¶ 15.

[11] *Id.* ¶ 16.

[12] *Id.*

[13] *Id.* ¶ 4. Mr. Talbert filed the Department of Justice's investigative report as an exhibit at the same time he filed his Complaint. The report is addressed to Governor Tom Corbett, not Governor Shapiro. *See* ECF 2.

[14] ECF 1 ¶ 5.

[15] *Id.* ¶ 6.

[16] *Id.* ¶ 7.

[17] *Id.* ¶ 12.

[18] *Id.* ¶ 13.

[19] *Id.* ¶ 17.

[20] *Id.* ¶ 19.

[21] *Id.* ¶¶ 3, 20–23.

[22] We detailed Mr. Talbert's history of filing complaints while in prison and his status as a "three-strike" plaintiff in our April 5, 2019 memorandum in *Talbert v. Carney*. Nos. 19-1340, 19-1341, 2019 WL 1516940, at *3 n.19 (E.D. Pa. Apr. 5, 2019). Mr. Talbert filed "at least fifty-four lawsuits" in our District by April 2019. *Id.* at *3. He had "at least four" pro se complaints dismissed for being frivolous or failing to state a claim from 2013 to 2016. *Id.* We reviewed his April 2019 complaint in *Talbert v. Carney* under Section 1915(g), and required Mr. Talbert plead imminent danger of serious physical injury. *Id.* We declined his motion to proceed *in forma pauperis* because he did not plead imminent danger. *Id.*

[23] *Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000).

[24] 28 U.S.C. § 1915A(a).

[25] 28 U.S.C. § 1915A(b).

[26] *Turner v. District Att'y Phila. Cnty.*, No. 22-491, 2022 WL 1568395, at *3 (E.D. Pa. May 18, 2022) (citing *Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)).

[27] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[28] *Elansari v. Univ. of Pennsylvania*, 779 F. App'x 1006, 1008 (3d Cir. 2019) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)) (quoting *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012)).

[29] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) and citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)) (internal quotations omitted).

[30] *Yogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala*, 704 F.3d at 244).

[31] *Id.* (quoting *Mala*, 704 F.3d at 245) (italics added).

[32] ECF 1 ¶ 3.

[33] *Id.* ¶ 17.

[34] *Id.*

17

[35] *Ulrich v. Corbett*, 614 F. App'x 572, 573 (3d Cir. 2015) (*citing MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503–04 (3d Cir. 2001)).

[36] *Id.* at 573–574; *see also Hampton v. Wetzel*, No. 15-897, 2015 WL 2405062, at *2 (M.D. Pa. May 20, 2015) ("[T]he former governor and governor enjoy Eleventh Amendment immunity from suit for acts taken in their official capacities.").

[37] Although the Eleventh Amendment does not bar claims against the Commonwealth seeking prospective injunctive relief, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996), Mr. Talbert has not alleged a plausible claim seeking prospective injunctive relief against Governor Shapiro for the same reasons he has not alleged a claim. He has not plead a basis to find a reasonable likelihood of success on his injunction claim.

[38] ECF 1.

[39] *Geiger v. C/O Curry et al.*, No. 21-2244, 2021 WL 4453628, at *5 (E.D. Pa. Sept. 29, 2021) (quoting *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988)).

[40] *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

[41] ECF 1 ¶ 25.

[42] *Id.* ¶ 26.

[43] U.S. Const. amend. XIV.

[44] *United States v. Salerno*, 481 U.S. 739, 746 (1987).

[45] *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 425 (3d Cir. 2006) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

[46] *Sherrill v. City of Hoboken*, No. 20-1251, 2021 WL 4473392, at *1 (3d Cir. Sept. 30, 2021) (citing *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011)).

[47] ECF 1 ¶ 26.

[48] *Zappan v. Pennsylvania Bd. of Probation and Parole*, 152 F. App'x 211, 220 (3d Cir. 2005) ("The essential requirements of any procedural due process claim are notice and the opportunity to be heard.").

[49] *LaChance v. Erickson*, 522 U.S. 262, 266 (1998).

[50] *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).

[51] *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

[52] *Sandin v. Conner*, 515 U.S. 472, 486 (1995).

[53] *Washington-El v. Beard*, No. 08-1688, 2013 WL 1314528, at *7 (W.D. Pa. Feb. 26, 2013), *report and recommendation adopted,* No. 08-1688, 2013 WL 1314521 (W.D. Pa. Mar. 28, 2013), *aff'd*, 562 F. App'x 61 (3d Cir. 2014) (citing *Wilkinson v. Austin*, 545 U.S. 209, 125 (2005)) (no liberty interest "in avoiding transfer to more adverse conditions of confinement")).

[54] *Shoats*, 213 F.3d at 143 (internal quotation omitted).

[55] *Deans v. Floyd*, No. 21-00362, 2023 WL 3729300, at *12 (W.D. Pa. May 30, 2023) (citing *Sandin v. Conner*, 515 U.S. 472, 486 (1995)).

[56] *Shoats*, 213 F.3d at 143

[57] *Id.* at 144.

[58] *Id.*

[59] *Id.* at 147; *see also Bowen v. Ryan*, 248 F. App'x 302, 304 (3d Cir. 2007) (holding the incarcerated man had been given an initial opportunity to be heard upon confinement and again on period reviews as sufficient to satisfy due process).

[60] *Shoats*, 213 F.3d at 143–44.

[61] ECF 1 ¶ 26.

[62] *Rode*, 845 F.2d at 1207.

[63] ECF 1 ¶¶ 16–17.

[64] *Powell v. Weiss*, 757 F.3d 338, 346 (3d Cir. 2014).

[65] ECF 1 ¶ 28.

[66] *Id.* ¶ 29.

[67] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

[68] *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022) (quoting *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020)).

[69] *Thomas v. Rosemeyer*, 199 F. App'x 195, 198 (3d Cir. 2006).

[70] *Clark*, 55 F.4th at 179 (citing *Thomas*, 948 F.3d at 138).

[71] *Id.*

[72] *Id.* (citing *Farmer*, 511 U.S. at 834). Mr. Talbert also attempts to bring a separate "Deliberate Indifference" claim. *Id.* ¶¶ 31–32. But deliberate indifference is not a separate claim, but an element of his Eighth Amendment claim.

[73] *Clark*, 55 F.4th at 179 (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001)).

[74] *Id.* at 183.

[75] *Id.*

[76] *Disability Rights Montana v. Batista*, 930 F.3d 1090, 1097 (9th Cir. 2019) (quoting *Brown v. Plata*, 563 U.S. 493, 510 (2011)).

[77] *Fleming v. Pennsylvania Dep't of Corr.*, No. 19-00113, 2020 WL 3574634, at *10 (W.D. Pa. June 30, 2020) (citing *Cook v. Corbett*, No. 14-5895, 2015 WL 4111692, *6 (E.D. Pa. July 8, 2015).

[78] *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 442 (3d Cir. 2020) (citing *Shoats*, 213 F.3d at 144; *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017)).

[79] *Clark*, 55 F.4th at 179.

[80] *Id.* at 180.

[81] *Id.*

[82] ECF 1 ¶ 10.

[83] *Id.* ¶ 29.

[84] *Id.* ¶ 33.

[85] *Id.* ¶ 34.

[86] U.S. Const. Amend. XIV, § 1.

[87] *Deans v. Floyd*, 21-00362, 2023 WL 3729300, at *6 (W.D. Pa. May 30, 2023) (quoting *Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996)).

[88] *Brown v. Tice*, 20-00698, 2022 WL 1158611, at *4 (M.D. Pa. Apr. 19, 2022) (quoting *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016)).

[89] *Brandt v. Cirillo*, No. 22-3752, 2023 WL 157431, at *13 (D.N.J. Jan. 10, 2023) (citing *Cospito v. Heckler*, 742 F.2d 72, 83 (3d Cir. 1984) ("[M]ental illness has not been recognized as a suspect class . . . under the equal protection clause."); *Disability Rights N.J., Inc. v. Velez*, No. 10–3950, 2011 WL 2976849, at *15 (D.N.J. Jul. 20, 2011) ("[I]ndividuals with mental illness have never been held a 'suspect class.'")).

[90] *Id.* (internal citations omitted).

[91] *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

[92] *Glenn v. Barua*, 252 F. App'x 493, 500 (3d Cir. 2007) (quoting *Hill*, 455 F.2d 239).

[93] *Brandt*, 2023 WL 157431, at *13 (internal citations omitted).

[94] ECF 1 ¶ 33.

[95] *Brandt*, 2023 WL 157431, at *13 (internal citations omitted) (cleaned up).

[96] ECF 1 ¶¶ 6–7.

[97] *Id.* ¶ 20.

[98] *Nottingham v. Shapiro*, No. 21-396, 2021 WL 9166614, at *4 (M.D. Pa. Oct. 5, 2021), *report and recommendation adopted*, No. 21-396, 2021 WL 9166613 (M.D. Pa. Nov. 19, 2021), *aff'd sub nom. Nottingham v. Att'y Gen. Pennsylvania*, No. 21-3298, 2021 WL 9166614 (3d Cir. July 27, 2022).

[99] *Id.* (citing *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.2d 572, 586 (3d Cir. 2004)).

[100] *Beers v. Northumberland Cnty.*, No. 22-01101, 2023 WL 2469905, at *4 (M.D. Pa. Mar. 10, 2023) (internal citations omitted).

[101] *Nottingham,* 2021 WL 9166614, at *4 (internal citations omitted).

[102] *Banegas v. Hampton*, No. 8-5348, 2009 WL 1098845, at *4 (E.D. Pa. Apr. 22, 2009) (citing *Rode*, 845 F.2d at 1207).

[103] *Nottingham,* 2021 WL 9166614, at *5.

[104] *Id.*

[105] *Id.*

[106] *Id.*

[107] ECF 1 ¶¶ 20–23.

[108] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

[109] *Id.*

[110] ECF 1 ¶¶ 12–13.

[111] *Mack v. Clark*, No. 21-00004, 2022 WL 2669510, at *5 (W.D. Pa. July 11, 2022) (quoting *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990)) (cleaned up).

[112] *Washington v. Wolf*, No. 16-01714, 2017 WL 9487089, at *5 (W.D. Pa. Oct. 26, 2017), *report and recommendation adopted as modified*, No. 16-01714, 2017 WL 5589089 (W.D. Pa. Nov. 21, 2017).

[113] *Nottingham,* 2021 WL 9166614, at *5.

[114] *Id.*

[115] *Mable v. Wetzel*, No. 20-01771, 2022 WL 1620079, at *7 (W.D. Pa. May 23, 2022).

[116] *Rode*, 845 F.2d at 1207.